## BISHOP v. ROCKY MOUNTAIN BELL TEL. CO.

No. 1891. Decided April 6, 1908 (94 Pac. 976).

TELEPHONES—INJURIES FROM MAINTENANCE—NEGLIGENCE—QUESTION FOR JURY. In an action against a telephone company for injuries to a traveler on a highway caused by his horse coming in contact with a broken wire in the highway, evidence *held* to authorize a finding of actionable negligence.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by Amos H. Bishop against the Rocky Mountain Bell Telephone Company. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*George Y. Wallace* for appellant.

*Moyle & Van Cott* for respondent.

STRAUP, J.

The plaintiff brought this action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The defendant was engaged in the telephone business. It had constructed and maintained a line of poles upon which were strung something like forty wires along a public highway running through the county of Davis, where the alleged injury occurred. A severe windstorm on the night of October 20, 1906, and on the following day, blew down a number of poles and wires upon the traveled portion of the highway. On November 10th the plaintiff, a rural mail carrier, was traveling on the highway with a horse and cart, delivering mail. His horse, coming in contact with one of the wires, became frightened and unmanageable. The plaintiff was thrown from his cart, and was injured. The case was tried to the court and a jury. A verdict was rendered for the plaintiff in the sum of $818. The defendant appeals.

It is contended that the court erred in refusing defendant's request to direct a verdict in its favor and in overruling its motion for a new trial, on the ground of insufficiency of evidence to show negligence on its part. Among others the court submitted to the jury the question with respect to the care and diligence used by the defendant in clearing the highway of the obstructions, and in removing the wires and material upon it after the storm had abated.

The evidence on the part of plaintiff shows that the highway was only party cleared; that some of the wires were removed from the main traveled part of the highway, and strung

33 Utah—30

along the ground near the poles; that some of the shorter wires were not removed, but were left on the highway; that teams and cattle traveling along the highway came in contact with the wires placed by the poles, and were dragged back on the road. It was testified to that wires, at the point of the accident, and at other places along the highway, were left on the main traveled portion of the road after the storm and up to the 10th of November. One of the witnesses, who was in the employ of the defendant at the time, testified that: "Between the time when the wires were blown down and the clean-up you could hardly go out there (along the place in question) any time but what you would find wires in the road, because men driving cattle along the road dragged the wires into the road. It wasn't until after the 15th of November that they were finally cleaned up." Evidence was also given on behalf of plaintiff which tended to show that the defendant first removed and erected the poles, strung the good wire which had fallen in the highway, and put the line in working order before finally cleaning up the highway.

Evidence was given on behalf of the defendant that, when the storm abated, a force of men—sixty or seventy—was at once put to work in reconstructing the line a distance of about eighteen miles; that a force of men were employed to remove the debris from the highway, five of whom were employed for such purpose between Layton and Kaysville, a distance of something over two miles, and between which places the accident occurred; that prior to plaintiff's injury the crown of the road had been cleared of all wire. That most of it was rolled up, some of it taken to the storeroom, and some of it rolled up and placed by the poles, which were about twenty feet from the crown of the road. The wires which were 155 feet in length were reeled, and those not so long were coiled. Most of the wire was copper wire, which was used in the reconstruction work. The wires which were not used were left by the poles until the line was reconstructed, which took about three weeks, at which time the wires not used were cut up and taken away. It is also shown by some of the evidence of the defendant that the wires along the poles were left in such condition that cat-

tle and sheep and various animals running upon the highway came in contact with them and dragged them on the traveled portion of the road. One of the witnesses, an employee of the defendant at the time, and who testified to such facts, testified that he saw a wagon drive along the highway and pull the wires out and on another occasion he saw a cow go across the highway and pull the wires out from the poles.

Plaintiff and several other witnesses testified that one of the defendant's wires was on the highway at the time in question, and that plaintiff's horse was frightened by coming in contact with it. Several witnesses for the defendant testified that immediately after plaintiff was thrown from his cart they went along the road to look for wires, but they did not find any. As to whether there was a wire on the highway, and whether that was the cause of plaintiff's horse becoming frightened, the evidence is very conflicting, as it is upon almost every other fact in the case. But counsel for appellant substantially concedes that the plaintiff in the first instance proved sufficient facts to send the case to the jury. In his reply brief he says: "It is submitted that the record discloses that, while the plaintiff may have made a case in chief, he completely overlooked the necessity in law of overcoming the defense of the defendant." The defense referred to is that the defendant gave evidence to show that it used all reasonable diligence to clear the highway as fast as men could do the work. It is claimed that the facts with respect to the diligence were proved by telephone men, and by men experienced in the business; that, "if it had been possible, obviously it would have been easy for the plaintiff to have produced witnesses who would qualify as expert telephone men, and thereafter testify that the defendant company did not clear the highway with due diligence;" and that the method employed by the defendant was not the approved and effective way of doing the work.

We think counsel has confused mere weight with sufficiency of evidence, confounded a defense which only negatived allegations of the complaint and disputed plaintiff's evidence in support of them with a defense in avoidance or of an affirmative character, and has erroneously assumed that the facts and

circumstances from which the existence of defendant's diligence and care in the premises, or want of it, might be found, were susceptible only of proof by the testimony of those experienced in the business, and misconceived the province of the jury to find the ultimate fact and to draw the conclusion with respect to the proper degree of care and diligence which ought to have been exercised by the defendant, and which was a fact in issue, and upon which the decision of the case depended.

The case was properly submitted to the jury. The judgment is therefore affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.